UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHY PEACOCK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:04CV920 TIA |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the denial of plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act and for Supplemental Security Income benefits under Title XVI of the Act. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## Procedural History

On November 4, 2002, plaintiff filed an application for Supplemental Security Income benefits (SSI) and an application for Disability Insurance Benefits (DIB), alleging disability beginning October 3, 2002 due to depression, fibromyalgia, and rheumatoid arthritis. (Tr. 58-60, 67, 210-213) The applications were denied, and plaintiff requested a hearing. (Tr. 33-40, 214-220, 224-225) On March 23, 2004, Plaintiff testified at a hearing before an Administrative Law Judge (ALJ). (Tr. 232-261) In a decision dated April 12, 2004, the ALJ determined that Plaintiff was not under a disability at any time through the date of decision. (Tr.16-24) On June 3, 2004, the Appeals Council denied plaintiff's request for review. (Tr. 7-9) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

**Evidence Before the ALJ**

At the hearing before the ALJ, Plaintiff was represented by counsel. At the time of the hearing, Plaintiff was 43 years old and received 1 ½ years of college education. She previously worked in the gambling industry as a surveillance officer for two years and beverage assistant manager. Her surveillance officer duties included surveying the casino and its employees, as well as training those employees. Plaintiff did not have hiring responsibilities, and firing was a group decision made by the supervisors and the manager. As an assistant beverage manager, Plaintiff ran all the bars, supervised the bartenders and servers, and ordered supplies. Plaintiff had hiring and firing responsibilities in this position. Plaintiff further testified that she also worked as an undercover loss prevention officer at Grandpa's, J. C. Penney's, Lambert International Airport, and Six Flags. Prior to that, she was a flight attendant and a flight attendant trainer. (Tr. 234-239)

Plaintiff stated that Dr. Gary LaMonda was treating her for fibromyalgia over the past year and a half. Plaintiff also saw Dr. William Trumbower, her gynecologist. Plaintiff testified that the fibromyalgia caused constant pain, depression, muscle spasms, and irritable bowel. She stated that her leg sometimes gave out when walking. She was unable to sit or stand for long periods because it caused muscle spasms. While Dr. LaMonda treated her depression, Plaintiff testified that she had not seen a psychiatrist or psychologist. (Tr. 239-240)

Plaintiff further testified to sleeping poorly. She stated that she woke up several times a night due to muscle spasms and a need to use the bathroom. She drove a car only twice a month to see Dr. LaMonda or pick up prescriptions. Plaintiff testified that she did not drive much because she could not tolerate sitting for long periods of time, especially behind the wheel where she was unable to maneuver herself very well. With regard to household chores, Plaintiff occasionally did the laundry

in 20 minute spurts. Plaintiff would then rest. Her children did the vacuuming, and her husband did the grocery shopping. (Tr. 240-242)

Plaintiff opined that she could stand in one spot for 15 to 20 minutes before experiencing severe pain in her back. She could sit comfortably for about 20 minutes before feeling pain in her back, hip, and knees. Plaintiff testified that she could lift 5 pounds. If she lifted anything heavier, Plaintiff would lose her grip. She could walk a block and a half. However, walking caused back pain, hip pain, muscle spasms, and leg weakness. Plaintiff stated that she woke up around 7:30 a.m. Her children got themselves ready for school and fixed their own breakfast. Plaintiff put some dishes in the dishwasher and then alternated between sitting and standing until about 10:30 a.m., at which time she lay down. After getting up, Plaintiff made a sandwich for lunch, read a little bit, or watched TV. She then lay down again between 2:00 p.m. and 4:00 p.m. until her children returned from school. (Tr. 242-243)

With regard to her depression, Plaintiff testified that she cried and slept a lot. The crying spells occurred twice daily, which she attributed to her inability to do things with her children, inability to keep her house the way she would like, and financial hardships. Plaintiff stated that she cried during television commercials and sometimes spaced out and missed entire programs. Plaintiff read books. However, she occasionally had to re-read because she forgot what she read. She rarely cooked because she was unable to stand at the stove long enough to cook a meal. (Tr. 243-244)

Plaintiff further testified that in October 2003 she tried walking two miles a day for weight reduction. She stated, however, that she would walk two blocks and return home to lie down due to pain in her back and hips. Prozac helped her depression, but she still did not feel normal. Plaintiff stated that she chose October 3, 2002 as her onset date because she quit work on that date because she

3

was unable to function. When Plaintiff moved from St. Louis to Columbia, her husband, children, and mother helped pack and move. She did not begin seeing Dr. LaMonda until a few months after her September 2002 move because she did not have insurance. Plaintiff testified that she saw Dr. LaMonda every two or three months unless she had a specific problem. Dr. LaMonda treated her fibromyalgia, and she had not seen a mental health counselor. Plaintiff stated that her physical problems which precluded work included pain when standing, trying to walk long distances, lifting or carrying anything heavy, and falling because her legs gave out. Plaintiff had not been to the emergency room since October 2002. Plaintiff also complained of frequent urination. Plaintiff slept a lot, but when she was awake, she had to go to the bathroom and could not wait. Plaintiff testified that she wore pads for this problem. In addition, the pain impeded her concentration. She stated that the pain varied in intensity from seven to ten on a scale from one to ten and depended on the day and the weather. (Tr. 244-251)

Kathleen McAlpine, a vocational expert (VE), also testified at the hearing. With regard to her past work history, the VE stated that her jobs as a loss prevention manager and food service manager were considered light and skilled. However, as a food service or beverage manager, some lifting could be involved which would qualify as medium to light, skilled work. Plaintiff's positions as a flight attendant, flight attendant trainer, and surveillance supervisor undercover were also light and very skilled. Plaintiff possessed transferable skills which consisted of observing, reporting, and documenting materials or personnel; ordering; shipping supplies; and understanding ticketing and gate information. (Tr. 252-254)

The ALJ then asked the VE to assume that Plaintiff had the residual functional capacity to perform sedentary work. In that case, Plaintiff would be unable to perform any of her past relevant

4

work. Next, the ALJ asked the VE to assume a hypothetical claimant with the same age, education, and work experience as Plaintiff. The person could do sedentary work and had a moderate limitation on concentration, mild limitation on social activities and interaction with people, and mild limitation on daily activities. The VE opined that such a person could work as a receptionist/information clerk, which was sedentary and semi-skilled. Plaintiff's transferrable skills would include working with customers, taking messages and reporting, and giving directions to the gate at an airport. There were 1.1 million such jobs in the nation and 26,585 in Missouri. The VE also opined that the claimant could be a dispatcher, which was sedentary and semi-skilled. Plaintiff's ability to understand scheduling, take information, and report information would be transferrable. There were 14,000 dispatcher jobs in the nation and 4,295 in Missouri. The hypothetical claimant could also be a surveillance monitor of which there were 10,666 jobs nationally. (Tr. 254-256)

If the ALJ added the limitation of a sit/stand option, the jobs and the numbers would not change. The VE then acknowledged that a treating internist would be an appropriate source to assess a person's RFC. Plaintiff's attorney added further limitations based on the hypothesized report of the treating internist of lifting 5 pounds occasionally; standing for a total of 60 minutes; sitting for a total of 70 minutes; and needing to recline for up to 30 minutes 1 to 3 times a day. The VE stated that the lying down requirement would eliminate the listed jobs. However, those jobs required minimal lifting and provided a sit/stand option. In closing statement, Plaintiff's attorney argued that Plaintiff's treating physician indicated that Plaintiff could perform less than sedentary work and thus she was disabled. (Tr. 256-260)

Plaintiff's husband completed a Daily Activities Questionnaire on behalf of Plaintiff. He stated that Plaintiff was in constant pain and lacked muscle control. He described her as more withdrawn,

5

less active, and prone to crying all the time. He also mentioned Plaintiff's lack of bladder control and loss of memory. He noted how draining Plaintiff's impairments had been on himself and his family. (Tr. 87-89)

**Medical Evidence**

From April 23, 1999 through August 9, 2002, Plaintiff was treated by Primary Care Consultants for migraine headaches and fibromyalgia. (Tr. 106-112) On June 20, 2000, Plaintiff complained of back and leg pain. Dr. Edward L. Burns noted positive straight leg raising on the left and minimal weakness of the left hip. He assessed radiculopathy and prescribed Vicodin, Naprosyn, and Parafon forte. By July 10, 2000, Plaintiff's low back pain had improved, but she complained of problems with her neck radiating to her left hand. The diagnosis was possible radiculopathy and probable need for an MRI of the neck. On February 7, 2001, plaintiff complained of increased problems with her fibromyalgia. Examination revealed some trigger point tenderness in the right trapezius muscle. Plaintiff planned to get pregnant, so she tapered off of Wellbutrin and Toprol. On April 6, 2001, Plaintiff reported significant right sided neck pain. Examination revealed tenderness and tightness, but no definite trigger point. The physician assessed cervical strain secondary to her fibromyalgia. (Tr. 109-112)

On February 1, 2002, plaintiff continued to complain of fibromyalgia, as well as the return of her depression. Plaintiff had full range of motion in her extremities and neck. She had some tenderness and trigger points in her trapezius and muscles in neck and back. Plaintiff re-started Atenolol and Wellbutrin. On August 8, 2002, Plaintiff reported only taking Prozac. She complained of fibromyalgia, fatigue, and problems sleeping due to discomfort. She previously had seen a

6

rheumatologist but was unable to return due to an insurance change. Plaintiff continued to work and stay busy. Examination revealed tenderness in her neck, shoulder, hip, and thighs. However, Plaintiff had no palpable trigger points. The physician recommended that Plaintiff continue taking Prozac and re-start Wellbutrin, as it had previously worked well for Plaintiff's fibromyalgia. Plaintiff also received prescriptions for Zanaflex and Parafon Forte and referrals to three different rheumatologists. (Tr. 107-108)

On September 4, 2005, Dr. Sanjay Ghosh on September 4, 2002 for complaints of constant moderate dull pain in the ankles, feet, hips, and shoulders. Plaintiff reported that the pain increased with exertion and that nothing decreased it. Dr. Ghosh assessed inflammatory arthritis, symmetrical polyarthralgia, and fibromyalgia. (Tr. 119)

Dr. Hope C. Wagner examined Plaintiff on December 18, 2002. Plaintiff reported that she was unemployed since October 3, 2002. Plaintiff complained of fibromyalgia and a list of problems. She was unable to sit, stand or walk. In addition, Plaintiff dropped things. She reported migraines, depression, irritable bowel syndrome, and irritability. Plaintiff stated that her symptoms started in 1997 and began to interfere with work in 1999. Plaintiff stopped working because she was unable to walk or carry equipment. She experienced "crying jags" and fatigue, and she had to go to the bathroom all the time. Plaintiff was able to get along well with co-workers and supervisors. During the day, Plaintiff got her stepdaughter ready for school, did the morning dishes, and watched TV for the rest of the day. Her husband cooked and cleaned. (Tr. 120-121)

Plaintiff reported sleeping only 3 hours a night due to muscle cramps and restless legs. She had a decrease in interests, energy, and concentration. She felt hopeless and worthless with some panic symptoms. She rated her pain level as 7 to 8 out of 10, and a 10 plus when she tried to work.

Plaintiff had never seen a psychiatrist or counselor. Dr. Burns previously prescribed Prozac which helped Plaintiff feel less depressed. However, she continued to live in pain. Dr. Wagner acknowledged Plaintiff's diagnosis of fibromyalgia and noted that medication did not help. Plaintiff took Advil and a Multivitamin. She smoked a pack of cigarettes a day. (Tr. 121-122)

Dr. Wagner noted that Plaintiff walked in the room without difficulty but left moaning and moving in a stiff manner. Plaintiff's mood was depressed, and her motor activity was normal. There was no evidence of psychosis. Plaintiff's intellect was average, and her insight and judgment were intact. Dr. Wagner assessed Major Depression, recurrent; fibromyalgia by claimant report; and a GAF of 55. She recommended that Plaintiff seek treatment by a psychiatrist and possibly a therapist. She noted that Plaintiff's prognosis was good and that, once treated, Plaintiff could return to work in 1 month. (Tr. 123-125)

On January 11, 2003, Plaintiff saw Dr. Scott DeBates for complaints of depression, concentration and memory problems, rheumatoid arthritis, and fibromyalgia. Dr. Bates noted limited flexion extension range of motion in her lumbar spine with complaints of lower back pain. She had a mildly reduced supine straight leg raising bilaterally, and she did not have a positive seated straight leg raise. Plaintiff moved slowly and appeared to have some symptom magnification. He doubted rheumatoid arthritis but opined that Plaintiff could have a start of osteoarthritis. Dr. DeBates opined that Plaintiff could perform work related activities despite her impairments. (Tr. 152-154)

From February 26, 2003 through October 28, 2003, Plaintiff saw Dr. Gary LaMonda. (Tr. 167-181, 183-188, 200-205) On February 26, 2003, Plaintiff complained of symptoms related to fibromyalgia. The examination was normal. While the diagnosis is illegible, it appears that Dr. LaMonda assessed fibromyalgia/fatigue; severe/depressed; severe/chronic pain; sleep disorder;

smoker; migraines; and joint pain/spasms. (Tr. 179-180)

On March 27, 2003, Plaintiff complained of pain in her right leg joints and depression. Physical examination was normal. Dr. LaMonda assessed stress; disabled due to fibromyalgia; smoker; and depression. (Tr. 170-171) On June 28, 2003, Dr. LaMonda completed a Medical Source Statement. He indicated that Plaintiff could occasionally lift 5 pounds; stand continuously for 1 hour; sit continuously for 70 minutes; push and/or pull with limitations of losing grip in her hands and her legs giving out. Dr. LaMonda opined that Plaintiff should never climb, stoop, kneel, or crouch. She could occasionally balance and bend. She was limited in her ability to reach, handle, finger, and feel because these cause severe pain in her arms and legs. In addition, Plaintiff had environmental restrictions in that dust and smell caused headaches. Dr. LaMonda noted that the lab reports were normal; he did not have x-ray reports; and he reached his conclusion based on Plaintiff's subjective history of pain. Dr. LaMonda believed that rest would be helpful to Plaintiff, including assuming a reclining position, assuming a supine position, and propping up her legs 1 to 3 times daily. (Tr. 167-169)

On October 23, 2003, Plaintiff reported that her depression was worse, she slept a lot, and she had trouble sleeping at night. Plaintiff reported that she walked 2 miles a day, yet she gained weight. Examination was normal, and Dr. LaMonda recommended the Atkins diet. (Tr. 183-184) On October 28, 2003, Plaintiff complained about her weight. Dr. LaMonda diagnosed obesity and fibromyalgia. He recommended that Plaintiff increase her activity. (Tr. 187-188)

Dr. William Trumbower treated Plaintiff rom August 27, 2003 through November 10, 2003. Plaintiff complained of possible abnormal Paps, fibromyalgia, chronic fatigue, and severe cyclic pain. On September 11, 2003, plaintiff called regarding increasing frequency of menstrual periods with pain.

9

Plaintiff experienced a sudden onset of right breast blood discharge on November 10, 2003. Dr. Trumbower recommended a mammogram and a hysterectomy. (Tr. 190-191)

On November 17, 2003, Dr. Bruce E. Brown assessed transient history of right breast spontaneous rusty nipple drainage consistent perhaps with small intraductal papilloma; normal mammogram; and anxiety. He recommended that Plaintiff not express her nipples and apply moisturizing cream to them. He suggested that Plaintiff return in 6 weeks. (Tr. 192-193)

### The ALJ's Determination

In a decision dated April 12, 2004, the ALJ determined that Plaintiff was insured for disability insurance benefits through the date of the decision. The ALJ considered Plaintiff's fibromyalgia as a severe impairment, but her depression was not severe. Plaintiff's fibromyalgia did not meet or equal one of the listed impairments. Further, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible. Plaintiff retained the RFC to perform sedentary work with a sit/stand option. She had slight restriction of daily activities; slight difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration. Plaintiff was unable to perform any of her past relevant work. However, the ALJ determined that based on Plaintiff's younger age, high school education with one year of college, and acquired work skills which were transferrable, Plaintiff had the RFC to perform substantially all of the full range of sedentary work. Based on these factors and the VE's testimony, the ALJ concluded that Plaintiff was not disabled at any time through the date of the decision. (Tr. 22-24)

Specifically, the ALJ assessed the medical evidence from 1999 through October 28, 2003. The ALJ also noted Dr. LaMonda's opinion that Plaintiff's RFC was less than sedentary. In addition, the ALJ evaluated Plaintiff's written statements and her testimony during the hearing, which included the

severity of her pain and her daily activities. With regard to Plaintiff's vocational abilities, the ALJ assessed the VE's testimony. (Tr. 16-20)

The ALJ found that Plaintiff's treatment was routine and/or conservative in nature. She noted specifically that Dr. LaMonda's opinion regarding Plaintiff's RFC was unsupported by the objective medical evidence and his own treatment notes, which did not reflect objective findings or specific trigger/tender points for diagnosing fibromyalgia. In addition, the ALJ determined that Plaintiff had never received any mental health treatment but only medication for her allegations of ongoing depression. Further, Plaintiff testified that Zoloft helped her depression. Thus, the ALJ found that Plaintiff's allegations that her impairments precluded her from work-related activities were not fully credible. Further, the ALJ determined that Plaintiff's description of her symptoms and limitations were inconsistent and unpersuasive. The ALJ thus concluded that Plaintiff was not under a disability. (Tr. 20-21)

The ALJ also considered, evaluated, and rejected the opinions of the non-examining State Agency physicians as conclusory and unsupported. The ALJ noted that, in evaluating Plaintiff's mental impairments, Plaintiff showed a slight restriction of daily activities, slight difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. Therefore, the ALJ found that Plaintiff had the RFC to perform sedentary work with a sit/stand option. The ALJ concluded that, although Plaintiff was unable to perform her past relevant work due to her impairments, she had the exertional capacity to perform substantially all of the requirements of sedentary work and, therefore, was not disabled. (Tr. 21-22)

**Legal Standards**

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that plaintiff is not engaged in substantial gainful activity; (2) that she has a severe impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities; or (3) she has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) she is unable to return to her past relevant work; and (5) her impairments prevent her from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence,

the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[1] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence

---

[1]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

13

support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## **Discussion**

The Plaintiff first argues that the ALJ erred by failing to give the VE a proper hypothesis reflecting all of Plaintiff's impairments. The Defendant, on the other hand, contends that the hypothetical question was proper in that it included those impairments the ALJ found credible. The Defendant also asserts that the ALJ performed a proper credibility analysis and thus substantial evidence supports the ALJ's finding that Plaintiff was not disabled.

The undersigned agrees that substantial evidence supports the ALJ's determination. The record shows that the ALJ properly assessed plaintiff's credibility in this case. First, the objective medical evidence did not support the plaintiff's allegations of disabling pain. The ALJ specifically found that plaintiff suffered from fibromyalgia. However, she additionally stated that the symptoms were not disabling. The ALJ noted specifically that Plaintiff's treatment was routine and/or conservative in nature. Further, Dr. LaMonda's treatment notes did not reflect any objective findings or identify specific trigger/tender points. See Brosnahan v. Barnhart, 336 F.3d 671 (8th Cir. 2003) (finding consistent trigger-point findings supported objective medical evidence of debilitating fibromyalgia).

In addition, Plaintiff did not frequently seek medical treatment for fibromyalgia after the alleged onset date. The record indicates that Plaintiff saw Dr. LaMonda in February and March of 2003 and then on two occasions over 6 months later in October of 2003. The physical examinations during these appointments were essentially normal, and Dr. LaMonda recommended that Plaintiff exercise. (Tr. 170-171, 180, 183-184, 187-188) In addition, the ALJ properly noted that Plaintiff did

not seek any treatment from a mental health professional for her alleged depression. Failure to seek medical assistance for alleged physical and mental impairments contradicts Plaintiff's subjective complaints of disability and supports the ALJ's decision to deny disability benefits. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997); see also Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) ("[t]he absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in [plaintiff's] mental capabilities disfavors a finding of disability").

Additionally, while the Plaintiff argues that the ALJ failed to discuss Plaintiff's medications, the record indicates that she mentioned some in the opinion and referred to others listed in Plaintiff's questionnaire. (Tr. 19, 90) Plaintiff reported that the only side effects from her medications were drowsiness, weight gain and bloating. (Tr. 90) Further, Plaintiff testified that anti-depressants helped her depression. "Impairments that are controllable or amenable to treatment do not support a finding of disability . . ." Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997). In addition, the record shows that Plaintiff did not take her pain medications on a consistent basis. While she noted that she lacked the finances to pay for said medication, nothing in the record indicates that Plaintiff sought treatment offered to indigents or applied for Medicaid. Indeed, the record shows that Plaintiff was able to support a smoking habit. (Tr. 152); see Riggins v. Apfel. 177 F.3d 689, 693 (8th Cir. 1999) (evidence supported ALJ's conclusion that plaintiff's complaints of disabling pain were not credible where plaintiff presented no evidence that he sought treatment offered to indigents or chose to quit smoking to finance pain medication).

Plaintiff argues that the ALJ improperly discounted Plaintiff's treating physician's RFC finding and erroneously relied on the one-time consultations of Drs. DeBates and Wagner. The undersigned finds, however, that the ALJ properly discredited the report of Dr. LaMonda, wherein he opined that

plaintiff was disabled. "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted). However, "an ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Holstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) (citation omitted). In doing so, the ALJ must give good reasons. Id. The ALJ noted that Dr. LaMonda's treatment notes and objective clinical findings did not support the restrictive limitations set forth by Dr. LaMonda in the residual function form. Indeed, Dr. LaMonda specifically stated that his opinions were based on Plaintiff's subjective complaints and not on diagnostic testing. (Tr. 169) He also recommended that Plaintiff increase activity for weight loss. (Tr. 188) Therefore, the ALJ properly disregarded Dr. LaMonda's opinion.

In addition, courts will uphold an ALJ's decision to disregard a treating physician's opinion where other medical reports are supported by superior or more complete medical evidence. Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir. 2000) (citing Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)). Here, the Defendant correctly points out the fact that Dr. DeBates and Dr. Wagner performed in-depth examinations and recorded those objective findings and observations. (Tr. 120-127, 152-157) Thus, the ALJ properly relied on the findings of the consulting physicians in determining that Plaintiff's impairments were not disabling.

The ALJ also relied on the fact that plaintiff's daily activities were inconsistent with her allegations of total disability. Plaintiff testified that she got her children ready for school, washed dishes, and made lunch. These activities are inconsistent with her allegations of disabling pain.

16

Gwanthey v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (holding that Plaintiff's ability to perform housework among other activities precluded a finding of disability). While these activities alone may not constitute substantial evidence that plaintiff is not disabled, the activities in conjunction with the lack of supporting medical evidence may be used to discredit plaintiff's subjective complaints. Kelley v. Callahan, 133 F.3d 583, 588-89 (8th Cir. 1998).

Plaintiff contends that the ALJ erred by failing to delineate the Polaski factors in the opinion. The record shows, however, that while the ALJ did not specifically cite Polaski, she did cite to SSR 96-7p, which requires the ALJ to consider those factors. (Tr. 18) "The ALJ was not required to discuss methodically each *Polaski* consideration, so long as [she] acknowledged and examined those considerations before discounting [plaintiff's] subjective complaints." Lowe v. Apfel, 226 F.3d 969, 973 (8th Cir. 2000) The ALJ's determination indicates that she did take into account the Polaski factors in determining that Plaintiff's subjective complaints were not fully credible. The undersigned notes that the ALJ did not specifically mention Plaintiff's husband's statement regarding Plaintiff's alleged disability. However, his statement contained the same allegations as Plaintiff's testimony regarding her limitations. Although the ALJ did not expressly discredit Mr. Peacock's statement, failure to give specific reasons for disregarding his statement is inconsequential where the same evidence used in discounting Plaintiff's testimony supports discounting Mr. Peacock's statement. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (citation omitted). "Although specific articulation of credibility findings is preferable, [the court] consider[s] the lack thereof to constitute a deficiency in opinion-writing that does not require reversal because the ultimate finding is supported by substantial evidence in the record." Id. (citation omitted). Therefore, because the ALJ properly discredited the Plaintiff's allegations of disabling pain under Polaski, failure to specifically mention

17

Plaintiff's husband does not constitute grounds for reversal.

With regard to plaintiff's contention that the ALJ improperly determined that plaintiff had the RFC to perform sedentary work, the undersigned finds that substantial evidence supports the ALJ's decision. The ALJ relied on vocational testimony to find that plaintiff could work as a receptionist-information clerk, dispatcher, and surveillance monitor, which jobs existed in significant numbers in both the state and national economies. The Plaintiff relies on the VE testimony that, given the restrictions described by Plaintiff and contained in Dr. LaMonda's report, she would be unable to work. However, proper hypothetical must include only those impairments accepted as true by the ALJ. Pearsall v. Massanari, 274 F.3d 1211, 1220 (8th Cir. 2001). The ALJ did not include those alleged impairments and subjective complaints that she properly discredited. As previously stated, the limitations set forth by Dr. LaMonda was not supported by the medical evidence, and thus the ALJ properly disregarded his opinion. Based on a proper hypothetical, the VE testified that plaintiff was able to work certain sedentary jobs which existed in significant numbers in the national economy. Therefore, substantial evidence supports the ALJ's determination that plaintiff was not disabled, and the decision of the Commissioner should be affirmed. Id.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**.

/s/ Terry I. Adelman  
UNITED STATES MAGISTRATE JUDGE

Dated this 16th December, 2005.